Battle, J.
 

 The bill seeks to set aside the deed by which the plaintiff’s intestate conveyed her slaves to the defendant upon the ground that it was obtained by fraud or the exercise of undue influence; or to convert the defendant into a trustee upon the ground that theslave-i in question were conveyed to him upon a secret trust, that he was to hold them in a qualified state of bondage. The allegations upon the first ground are denied in the answer: that denial, so far from being disproved, is fully supported by the testimony, and the position is now abandoned. There is some doubt upon the second ground, not as to the law for that is clearly settled, (see Lemmond vs. Peoples, 6 Ired. Eq. Rep. 137, and the cases there referred to,) but as to the testimony: It is established by the proof, as we think, that the intestate did intend at ono time to convey her slaves to the defendant upon the secret trust charged in the bill. It is highly probable that she thought he being thei father, would not hold them in absolute slavery, but would permit them to enjoy as much of freedom as was compatible with their condition. In addition to
 
 *157
 
 this, tliere is the appearance of evasiveness in that part of the answer which responds to the charge of the secret trust. The words are: “ This defendant utterly denies that there was any secret trust or understanding between himself and intestate, that said slaves were to be freed by him; on the contrary the intestate well knew that they were to be and remain the slaves of this defendant.” The specific allegation in the bill to which the above is a response, is, in effect, not that the defendant was to free or set free the slaves, but that he was to hold them nominally and ostensibly as slaves, but really., and secretly, as free persons. The plaintiff might have filed exceptions and thereby compelled from the defendant a more direct and definite answer. Not having done so, the evasiveness in the answer, may cast suspicion upon it, but will not supply the plaintiff with proof upon that point. The effect of this su ¡picion, however, taken in connection with the proof of the intestate’s previously declared intention and the probability that such was her real purpose, prising from the relative situation of the parties, would induce us to believe that the dee I in question was executed upon the secret trust as charged, were it not disproved by the clearest and most indisputable testimony. There are three-subscribing witnesses to the deed, to wit: George Williamson, William Long and Yin-ceut Bradsher, all of whom were examined. George William-eon was first called, and testified that a short time previous to the execution of the deed, the defendant informed him that Polly Code wished to see him; that, he thereupon went to her house where she told him that she wished to convey her slaves to the defendant, upon which he said to her that it was. a matter of importance and she had better call in some of her neighbors and consult them about it; that she requested him to see a lawyer and get a proper instrument drawn, which ho did ; that he then went to her house where he met William Long and Yincent Bradsher, and the subject was talked over
 
 *158
 
 by them all; that he told Polly Code that, by conveying the slaves to the defendant, they would not be free, but would be slaves ;ind liable for the defendant’s debts and snbject to any disposition he might think proper to make of them; to which she replied, that she was fully aware of (hat, but she preferred they should belong to him, in preference to any of her relations, that she had once made a will and given the slaves to her relations, but they manifested such a desire to get possession of them, before her death, that they displeased her and she intended they should not have them ; that after talking the matter over, she being fully apprised of the contents of the deed, executed it, and he and the other two witnesses subscribed it: and that'she, at the time, seemed fully to under-stan ! what she was doing. This witness testified further, that two other insrruments were executed at the same time one of which was a bond for $200, given by the defendant to Polly Code for the purchase money of the slaves, and the other an obligation by him to take care of, and furnish a home for, a superanuated negro man owned by Polly Code, named Harry. The testimony of Long and Bradsher is substantially (he same with that of Williamson as to what occurred when the deed was executed, with some additional particulars which it is unnessary to mention. The defendant in his answer ■adiniis that he never paid the $200 to Polly Code, but says that she surrendered the bond to him upon his undertaking to pay debts for her, to that amount, a part of .vhich, he says, ho had paid, but he has made im proof it. The testimony of the ihroo subscribing witnesses rebuts, as we think, the presumption arising from the other circumstances of the case, that tiro deed in question was executed upon a secret trust, that (he dof -:x-dant was to hold the slaves in a qualified state of bondage. — • The proof of the declarations of the intestate made af.er she had executed the instrumentas to hcrintcutim in executing it, if admissible at all, is not much to be relied on, because
 
 *159
 
 It is apparently contradictory, and can only be reconciled by supposing that to some of the witnesses, she spoke of her washes to set her slaves free, but as she stated to others, the intention to do so had been abandoned, when she found that the laws of the State forbade it. What the defendant himself said about the matter, to wit: that the intestate had offered the slaves to him several times, but he did not think he could hold them, though he had concluded at last that he would try it, is not very intelligible, because nothing was said at the time to show for what purpose she had offered them, or upon what terms he was to hold them. At any rate the testimony is not sufficient to weigh down the pggpf, clear and indisputable, that after a full explangij^#TC^¿j^h|iree subscribing witnesses, the intestate ej^fcm^Nnoaeolp declaring that she knew that the negroes wrf&to be tlm«|i<&^b of the defendant, liable to the payment ra-hj^eSwnd subject to any disposition he might think pro|cVTo make-t^fficrl. To hold otherwise would be to make cVcu0$j5Weá3 ofg^tspicion stronger than' the most positive prool^Thattjv^tffe not disposed
 
 to
 
 do, and we must declare that the plaintiff has failed to sustain the material allegations of his bill, and, of course, it must be dismissed with costs.